# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

ADAM MARETT,

  Plaintiff,

v.

HART COUNTY, GEORGIA;
SOUTHERN HEALTH PARTNERS,
INC.; CHRIS CARROLL, in his official
and individual capacity; MICHAEL
DAVIS, in his individual capacity; DAVID
BELL, in his individual capacity;
JIMTORIUS HILL, in his individual
capacity, and DOES 1-10,

  Defendants.

CIVIL ACTION NO.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

**COMES NOW,** Plaintiff Adam Marett, by and through undersigned counsel, and hereby files his First Complaint for Damages:

## INTRODUCTION

1. This action arises out of the deliberate medical indifference Adam Marett was subjected to as a pretrial detainee at the Hart County Jail ("HCJ" or "Jail"), which directly and proximately caused him to sustain serious injuries to his head.

2. Plaintiff seeks monetary damages pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq ("ADA"),

and state negligence laws.

3.    Plaintiff asserts a claim for, failure to protect, deliberate indifference to his serious medical need, discrimination based on his disability, and medical negligence.

## JURISDICTION AND VENUE

4.    This honorable Court has jurisdiction over the federal questions involved in this action pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 12133, 1983, 1988.

5.    The proper venue is the Middle District of Georgia, Athens Division, as all acts complained of occurred in Hart County, Georgia.

6.    Hart County and the Sheriff's Office of Hart County were presented notice of Plaintiff's claims, where applicable, within twelve months after Mr. Marett's injury; moreover, the respective entities were provided with sufficient information and time to resolve such claims pursuant to O.C.G.A. § 36-11-1 and all other applicable statutory provisions but failed to do so.

## PARTIES

7.    At all times relevant hereto Adam Marett was a citizen of the United States and a resident of the city of Hartwell, Georgia.

8.    Defendant Hart County, Georgia ("Hart County" or "County") is a political subdivision of the State of Georgia, a "public entity" within the meaning

of Title II of the ADA and is subject to the jurisdiction of the Court.

9. Defendant Hart County, Georgia ("Hart County") is a political subdivision of the State of Georgia, a "public entity" within the meaning of Title II of the ADA and is subject to the jurisdiction of the Court. Defendant Hart County owns and maintains the Hart County Jail ("Jail") and is responsible for providing constitutionally adequate conditions for pre-trial detainees and inmates at the Jail, as well as establishing customs and policies for such purposes. Defendant Hart County had a duty to provide for the medical care of pre-trial detainees at the Jail, including the provision of constitutionally adequate mental health services.

10. Defendant Chris Carroll ("Carroll") is the Sheriff of Hart County. Sheriff Carroll is being sued in his official and individual capacity. As a constitutional officer, the Sheriff and deputies in his office have a duty to operate the Jail in a constitutionally sound manner. Furthermore, the Jail is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA, 42 U.S.C. §§ 12131 et seq., and Georgia sheriffs and their deputies act as "arms of the state" in developing, promulgating and implementing policies and procedures of delayed medical evaluation, the classification and housing of inmates, as well as the hiring and training of jailers.

11. Defendant Michael Davis (Davis") was a Hart County Sheriff's

Correctional Officer at all times material hereto and is being sued in his individual capacity.

12.   Defendant David Bell ("Bell") was a Hart County Sheriff's Correctional Officer at all times material hereto and is being sued in his individual capacity.

13.   Defendant Jimtorius Hill ("Hill") was a Hart County Sheriff's Correctional Officer at all times material hereto and is being sued in his individual capacity.

14.   Defendant Southern Health Partners, Inc ("Southern Health") is and was, at all times material hereto, a foreign for-profit Georgia Corporation that contracts with Defendant Hart County to perform a traditional government function under color of state law in the HCJ by providing administrative services, physician care, nursing care, emergency medical and sick-call services, medical records management, and medication management, as well as other related services, including the provision of mental health services for the Jail's mentally ill population.

15.   Plaintiff has been diligent in attempting to learn the identities of all the parties responsible for the wrongdoing herein alleged; however, Plaintiff believes additional parties do exist that are not named due to Plaintiff's inability to discover their identities or the extent of their involvement at this time. To that

end, Does 1 through 10 are parties that have not yet been identified but who are liable for the injuries alleged in this Complaint.

## FACTUAL ALLEGATIONS

16.    On May 23, 2024, Adam Marett was arrested and transported to the Hart County Jail by defendant Michael Davis for the charge of possession of methamphetamine.

17.    Defendants Michael Davis and Jimtorius Hill completed a medical triage sheet for Adam Marett.

18.    In completing the medical triage, Adam Marett was asked by Defendants if he felt as though he would harm himself and/ or others.

19.    Plaintiff responded affirmatively.

20.    Adam Marett was not placed on suicide watch.

21.    No suicide prevention countermeasures were implemented.

22.    He was booked into the Hart County Jail by defendants Bell and Hill on May 23, 2024, as a pretrial detainee.

23.    Adam Marett was placed in general population on or about May 23, 2024.

24.    On May 28, 2024, Adam Marett jumped head first from a second-floor balcony of Hart County Jail, sustaining serious injuries.

25.    Defendants Bell and Hill were assigned to oversee the intake and

housing assignment process at the time that Plaintiff was booked into Hart County Jail.

26. Defendants, Does 1-10, had the role of supervising the officers and guarding the inmates in the housing unit where Adam jumped.

27. When officers responded, Adam Marett was transported to Greenville Memorial Hospital via EMS for treatment of his injuries.

## COUNT I FAILURE TO PROTECT

28. Officers and guards at the HCJ had a constitutional duty to take measures to protect Adam from being left unsupervised and/or unprotected when he expressed ideations that put them on notice that he posed a known and unreasonable risk of harm to himself and others.

29. The intake officers were informed by Adam that he was considering hurting himself and/or others.

30. Hart County Jail Standard Operating Procedures 2.02 is a Suicide Prevention policy that states that "heighten security measures are necessary to ensure the detainee's suicide ideation cannot be executed."

31. The policy declares that all detention offices of the HCJ will abide and not deviate from the policy and procedures of this policy.

32. The policy states:

 "a) Intake screening for suicide risk must take place immediately upon booking and prior to cell assignment. This screening must include inquiry regarding:

a. Past suicide ideation and/or attempts;

b. Current intention, thought of, threat or plan or statement of suicide;

c. Prior mental health treatment/hospitalization;

d. Recent significant loss (job, relationship, death of a family member/close friend etc.);

e. Degree of intoxication;

f. History of suicidal behavior by family members/close friend;

g. Suicide risk during prior confinement; and

h. Arresting/transporting officer(s) belief that detainee is currently at risk."

33.    The policy also states that "if **any** of these issues are present, then this person would pose a greater risk of suicide. Caution, observation and additional inquiry needs to be performed. If there is a positive response to any of the above incident(s) or the booking officer feels that there is something not right a Suicide Risk Assessment Form must be completed and based on the completion of this questionnaire, will determine the next course of action." [Emphasis added].

34.    The policy further states "**if the inmate has made a threat of harming themselves or threating to take their life in any way, this will cancel the suicide assessment form and the inmate will be placed on suicide watch along with the implementation of countermeasures starting immediately**." [Emphasis added].

35.    Per the HCJ policy, medical staff should have been informed of Mr. Marett's suicidal ideations while the jail simultaneously implemented suicide prevention countermeasures.

36.    Despite Adam Marett presenting "current intention, thought of, threat or plan or statement of suicide", Defendants Bell and Hill and Defendants John

Does 1-10, did not perform any additional inquiry or observation of Adam Marett.

37.    Despite Adam Marett presenting "current intention, thought of, threat or plan or statement of suicide"; Defendants Bell and Hill and Defendants John Does 1-10 did not complete a Suicide Risk Assessment Form for Mr. Marett.

38.    Despite Adam Marett presenting "current intention, thought of, threat or plan or statement of suicide; Defendants Bell and Hill and Defendants John Does 1-10 did not place Mr. Marett suicide watch nor did they implement any countermeasures.

39.    Defendants failed to protect Alan from attempting suicide and disregarded suicidal ideations, which he communicated.

40.    Defendants Bell and Hill individually failed to intervene to protect Adam from harming himself despite having the time and ability to intervene.

41.    Defendants individually failed to submit or create a medical examination report informing medical staff of Mr. Marett's suicidal status.

42.    Defendant Carroll is liable for the failure to protect even if they were not individually involved because such officers had sufficient rank and authority for supervisory liability to attach for their acts and omissions that were casually connected to the failure of the guards in intake and housing units to protect Mr. Marett.

43.    Defendants Carroll and John Does 1-10 ratified the unconstitutional

actions of the officers who disregarded the suicidal ideations and were deliberately indifferent towards Mr. Marett's constitutional rights as a pretrial detainee by failing to implement any suicide prevention countermeasures after Mr. Marett expressed suicidal ideations.

44.    Defendant Hart County had a custom of policy of not providing constitutionally adequate medical staffing to the HCJ for the HCSO to adequately screen and treat residents of the Jail.

45.    Defendant Hart County's policy, custom or practice of understaffing the HCJ was the moving force behind the failure to protect Adam from self-harm.

46.    Defendant Hart County's policy, custom or practice of underfunding the HCJ was also the moving force behind the absence of medical staff in the intake department on the date of Mr. Marett's intake, and the subsequent delay to serious medical need caused by their absence.

47.    Because there was no medical staff in the intake department on the date of Mr. Marett's intake and booking, he was not evaluated by medical staff.

48.    The delay in his treatment proximately caused Mr. Marett to suffer and sustain injuries.

49.    The Defendants identified in this Count violated Adam Marett's clearly established Fourteenth Amendment rights as a pretrial detainee.

50.    The Defendants identified in this Count are not entitled to qualified

immunity pursuant to 42 U.S.C. §1983

51.     The Defendants identified in this Count directly and proximately caused Adam Marett to sustain serious injuries and to suffer in pain and are liable for injuries flowing out of such Defendants' deliberate indifference and failure to protect.

52.     Plaintiff is entitled to recovery of costs, including reasonable attorney fees, under 42 U.S.C. §1983.

## COUNT III
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED

53.     Mr. Marett's expression of suicidal ideations required immediate response in the form of implementing countermeasures to prevent suicide attempts, from the defendants.

54.     Per HCJ's policy Defendant's Davis, Bell, and Hill were required to place Mr. Marett on suicide watch and request an immediate medical evaluation.

55.     No counter measures were implemented to prevent Mr. Marett from attempting suicide.

56.     He was not placed on suicide watch.

57.     No medical evaluations were requested.

58.     None of the defendants made any reports about Mr. Marett's expression of suicidal ideations.

59.     Defendants displayed deliberate indifference to Mr. Marett's mental

state and potential to harm himself and/or others. No protections were put in place to protect Mr. Marett from attempting to harm himself.

60. Defendants Carroll and John Does 1-10 ratified the deliberate indifference of the officers in intake by not investigating or disciplining the deliberate indifference to Mr. Marett's serious need for medical evaluation and suicide prevention countermeasures.

61. The Defendants identified in this Count herein violated Adam Marett's clearly established Fourteenth Amendment rights as a pretrial detainee.

62. The Defendants identified in this Count are herein not entitled to qualified immunity pursuant to 42 U.S.C. §1983.

63. The Defendants identified in this Count herein caused Adam Marett pain and suffering and are liable to Adam Marett for pain and suffering directly or proximately caused by their deliberate indifference.

64. Plaintiff is entitled to recovery of costs, including reasonable attorney fees, under 42 U.S.C. §1983.

## <u>COUNT IV</u>
### UNCONSTITUIONAL VIOLATIONS OF ADA

65. HCJ is a public entity pursuant to 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

66. Monetary damages are available for violations of the Americans with Disabilities Act that also violate the constitution. *United States v. Georgia*, 546

U.S. 151, 155-160 (2006).

67.    Adam Marett was an individual with a disability within the meaning of Title II of the ADA because he suffered from impairments that substantially limited or restricted one or more of his major life activities.

68.    Mr. Marett made staff at HCJ aware of his impairments when he verbalized suicidal ideations.

69.    The officers and staff at HCJ denied him access or failed to make accommodation that would help Mr. Marett receive medical treatment.

70.    As a result of these unconstitutional violations of the ADA, Mr. Marett continued to suffer needlessly.

71.    Defendants Carroll and John Does 1-10 were of sufficient rank and authority for their acts and omissions described in this Count to constitute official acts or omissions of the Hart County Sheriff's Office and/or Hart County.

72.    Because the constitutional violations in Count III also violate Title II of American with Disabilities Act, Defendant Caroll in his official capacity and Defendant Hart County are liable to Plaintiff under 42 U.S.C. § 12131 et seq.

## COUNT V
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED

73.    Defendant Southern Health Partners, Inc. ("Southern Health") is a private entity that contracts with Hart County to perform a traditional governmental function of providing health care to inmates and pretrial detainees

at HCJ, which includes physical examinations, mental evaluations, acute or urgent care, and providing necessary medications or referrals.

74.    Defendant Southern Health, as well as its employees, agents or contractors, have a duty to provide constitutionally adequate medical care to the inmates at the HCJ.

75.    At the time of the subject incident up until today, Southern Health does not conduct medical evaluations on a resident at the Hart County Jail until they have been housed for 14 days.

76.    Defendant Southern Health does not provide a medical evaluation at the intake or booking stages of detention at the HCJ.

77.    Defendant Southern Health does not assign medical staff to the booking or intake areas of the HJC.

78.    Defendant Southern Health had a policy, custom or practice of deliberate indifference to inmates and pretrial detainees who need medical and mental health services, especially when such services are needed at the intake and booking stages of detention.

79.    This policy, custom or practice was the moving force behind the deliberate indifference to Mr. Marett's serious need for medical evaluation and /or treatment after expressing suicidal ideations.

80.    The Defendants identified in Count V herein violated Adam Marett's

clearly established Fourteenth Amendment rights as a pretrial detainee by their deliberate indifference to his serious medical needs.

81.    The Defendants identified in this Count herein directly and proximately caused Adam Marett to suffer needlessly and are liable to Adam Marett for the pain and suffering he sustained due to his injuries.

82.    Plaintiff is entitled to recovery of costs, including reasonable attorney fees, under 42 U.S.C. §1983.

**COUNT VI**
**NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION**

83.    Defendant Southern Health negligently hired retained, trained and supervised staff to provide medical care and skilled services to inmates and pretrial detainees at the Jail despite implementing a fourteen (14) day policy that causes direct and serious deliberate indifference to the serious medical and mental health needs of inmates being processed for detention.

84.    Defendant Southern Health negligently failed to maintain policies, procedures and budgets for its employees and contractors that would provide for adequate medical care and mental health care services to inmates who require such treatment.

85.    Defendant Southern Health failed to properly train and supervise its employees, agents and contractors to provide pretrial detainees like Adam Marett appropriate care.

86.     As a direct and proximate result of the negligent hiring, training and supervision by Defendant Southern Health, Defendant Carroll, and John Does 1-10, Adam Marett experienced pain and suffering, and loss of chance for a better outcome.

**COUNT VII**
**PUNITIVE DAMAGES AND ATTORNEY FEES**

87.     The acts and omissions of Defendants described herein constitute willful misconduct, malice, oppression, and an entire want of care, and caused Adam Marett to suffer in pain and the loss of chance of a better outcome, such that Plaintiff is entitled to punitive damages under state and federal laws.

88.     Plaintiff is also entitled to recovery of costs, including reasonable attorney's fees, under 42 U.S.C. § 1988 for constitutional claims.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for trial before a jury and judgment against Defendants as follows:

a) That Plaintiff recovers all general, special, compensatory, derivative and punitive damages as well as costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest.

b) That Plaintiff recovers for the expenses of litigation, including for reasonable attorney fees and costs pursuant to O.C.G.A. § 13-6-11;

c) That all issues be tried before a jury; and

d) For such other and further relief as this Court deems just and proper.


This 6th day of May 2026

                                                  **REYNOLDS LAW GROUP, LLC**

                                                  By:    /s/ *Thomas Reynolds*
3390 Peachtree Road, N.E., Ste. 1100                     Isaac Tekie
Atlanta, Georgia 30326                                   GA Bar No. 558190
888.665.0241 (T)                                         Thomas E. Reynolds, Jr.
888.677.1453 (F)                                         GA Bar No. 778864

                                                         *Attorneys for Plaintiff*